UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Chapter 11 |
| Fred Fuller Oil & Propane Co., Inc., | Case No. 14-12188-JMD |
| Debtor. | |

**REPLY IN SUPPORT OF FIRST INTERIM AND FINAL APPLICATION FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES OF <u>BRINKMAN PORTILLO RONK, APC</u>**

Brinkman Portillo Ronk, APC ("BPR") hereby files this Reply (the "Reply") in support of the *First Interim and Final Application for Allowance and Payment of Fees and Expenses of Brinkman Portillo Ronk, APC* (the "BPR Fee Application") [Docket No. 1046] and in response to the *Objection of United States Trustee to First Interim and Final Fee Application of Official Committee of Unsecured Creditors* (the "UST Objection") [Docket No. 1056].

### I.    INTRODUCTION

1.    BPR was hired by the Official Committee of Unsecured Creditors (the "Committee") to represent its interests in this case after the Committee was appointed on February 12, 2015. BPR has worked to represent the Committee throughout the nearly four years since it was hired. Upon appointment of a Chapter 11 Trustee in this case, the Committee's role was scaled back. However, the Committee did not cease to exist. Thus, BPR has continued to work on the Committee's behalf and to protect the interests of general unsecured creditors of Fred Fuller Oil & Propane Co., Inc. (the "Debtor"). The BPR Fee Application should be granted for at least the following reasons:

1

- The Committee supports the BPR Fee Application;

- There is no need for further discovery;

- A continuance would be prejudicial to BPR given the coming conversion of the case; and

- BPR's services in this case were reasonable and appropriate in light of the needs and instructions of the Committee.

## II. RELEVANT BACKGROUND

2. The Debtor filed a voluntary petition for bankruptcy protection on November 10, 2014.

3. Very shortly thereafter, on November 26, 2014, a sale of substantially all of the Debtor's assets was approved by the Court on an expedited basis. *See* Docket No. 105.

4. The Committee was appointed by the United States Trustee ("UST") on February 12, 2015. *See* Docket Nos. 163, 164.

5. The next day, the Committee chose BPR as its counsel. Leonard Deming of Deming Law Office in New Hampshire, of counsel to BPR, acts as local counsel to the Committee in this case.

6. The Court approved BPR's employment as counsel to the Committee effective as of February 13, 2015. *See* Docket No. 196.

7. On March 17, 2016, the UST filed a motion to appoint a Chapter 11 Trustee or convert the case to Chapter 7 (the "Motion"). *See* Docket No. 481.

8. On April 6, 2016, the Committee opposed the UST's Motion. *See* Docket No. 502.

9. On May 4, 2016, Fred Fuller caused the Debtor to file an application to change the Debtor's counsel and a motion to convert the case to Chapter 7. *See* Docket Nos. 537, 538.

10. After discussions, the Committee determined that these changes by Fred Fuller were made in an attempt to allow Mr. Fuller to remain in control of the Debtor and the bankruptcy case. The Committee was not in favor of this course of action. Therefore, the Committee filed an amended response to the UST's Motion favoring the appointment of a Chapter 11 Trustee to take control of the Debtor's operations from Mr. Fuller. *See* Docket No. 554.

11. On May 10, 2016, the Court granted the motion for appointment of a Chapter 11 Trustee. *See* Docket No. 555. The Court simultaneously denied the motions for change of counsel and for conversion of the case. *See* Docket Nos. 559, 561.

### III.   ARGUMENT

#### A. The Committee Supports the BPR Fee Application

12. The Committee in this case is comprised of three members; its chairman is George LeCours ("Mr. LeCours"). Although Mr. LeCours left his full-time employment with Sanel Auto Parts approximately 18 months ago, he has maintained his relationship with the company and has been asked to continue as their representative on the Committee. *See* Declaration of George LeCours in Support of Reply and BPR Fee Application (the "LeCours Declaration"), attached hereto as Exhibit A.

13. Mr. LeCours' declaration supports the fact that BPR acted in accordance with the directions given by the Committee. There was regular communication between the Committee and BPR throughout the case. The BPR Fee Application is in line with the directions given to BPR by the Committee. While the Committee took on a significantly diminished role after the appointment of a Chapter 11 Trustee in order to save the estate administrative costs, BPR stayed in contact with Mr. LeCours and kept the Committee apprised of the developments in the case.

3

14. Sanel Auto Parts supports the BPR Fee Application, and it is consistent with the wishes of the Committee. *See* LeCours Declaration. The BPR Fee Application should be granted. There is no need for any further discovery to take place.

### B. BPR Acted in Consultation with and At the Direction of the Committee

15. BPR has been employed to represent the Committee since February 13, 2015, a period of nearly four years. Throughout that time, BPR has worked closely with the Committee chairman, Mr. LeCours.

16. In the beginning of this case, the Committee was very active in working to protect the rights of its constituency. In particular, the Committee developed a working relationship with the Debtor's Chief Restructuring Officer, Jeffrey Varsalone ("Mr. Varsalone"). At the outset of the case, the Committee was not sure whether it could trust Mr. Varsalone and the Debtor's counsel to protect the rights of general unsecured creditors. The Committee was concerned that Mr. Varsalone was under Mr. Fuller's control. So, the Committee initially objected to the Debtor's disclosure statement and commenced negotiations on a consensual plan.

17. The Committee worked to negotiate additional provisions to protect general unsecured creditors. For example, the Committee negotiated a provision that would allow Mr. Varsalone to be an independent overseer of the Debtor's estate, which removed Mr. Fuller from control entirely. Additionally, the Committee negotiated for a post-confirmation oversight committee to come into existence on confirmation of the plan. These actions were taken to protect the general unsecured creditors from the flawed leadership of Fred Fuller, the Debtor's Chief Executive Officer.

18. After the appointment of a Chapter 11 Trustee, BPR advised the Committee that it is traditional for the Committee to step back and allow the Chapter 11 Trustee to do its job. As a

result, BPR maintained a general oversight role to monitor developments in the case and kept in touch with the Committee. BPR met with Mr. LeCours and Matthew D'Amore, Sanel Auto Parts's Chief Financial Officer. BPR also kept the Committee apprised of developments in the case through written updates. Throughout, BPR was always available to take questions from any Committee member or other general unsecured creditor.

### C. BPR's Actions Were Reasonable and Necessary

19. In its nearly four years of work on this case, BPR has worked consistently to protect general unsecured creditors of the Debtor, which comprise the Committee's constituency. This was in line with the wishes of the Committee. Prior to the appointment of the Chapter 11 Trustee, BPR worked on behalf of the Committee to ensure Mr. Varsalone's independence from Mr. Fuller and then negotiate a consensual plan with an oversight board. Since the Chapter 11 Trustee's appointment, the Committee has taken a less active role to save the estate administrative costs.

20. The UST Objection specifically identifies two events in this case as potentially objectionable: the Committee's change in position regarding the appointment of a Chapter 11 Trustee and the Trustee election that took place after the Court granted the appointment motion. In both of these instances, BPR worked with the Committee to determine and enact appropriate courses of action.

21. In March 2016, when the UST filed its motion for appointment of a Chapter 11 Trustee or conversion of the case to Chapter 7, the Committee had been working for over a year to develop a good working relationship with Mr. Varsalone. In the beginning, the Committee was unsure whether Mr. Varsalone could act independently of Mr. Fuller. BPR negotiated with the Debtor to have an independent oversight board and other provisions to protect unsecured

5

creditors under the plan. Therefore, the Committee came to believe that a Chapter 11 Trustee would not be necessary.

22. Prior to the hearing on the UST's Motion, Mr. Fuller, who was still CEO of the Debtor, filed motions to change the Debtor's counsel and to convert the case to Chapter 7. After consultations with the Committee and Mr. Varsalone, the Committee determined that Mr. Fuller had taken these actions in order to take full control once again and oust Mr. Varsalone from his position as CRO. The Committee was very uncomfortable with Mr. Fuller's efforts to derail the negotiated plan and convert the case, and did not believe that course of action to be in the best interests of the estate and its creditors.

23. Given these unexpected developments, the Committee determined that appointment of a Chapter 11 Trustee was necessary to ensure that Mr. Fuller stayed out of control of the Debtor and the estate assets. Because of these circumstances, the Committee changed its position and decided to support the appointment of a Chapter 11 Trustee. Mr. Varsalone also filed objections to Mr. Fuller's attempts to take control. *See* Docket No. 552.

24. Following directions from the Committee, BPR successfully argued for the appointment of a Chapter 11 Trustee and against conversion of the case at the hearing on May 10, 2016.

25. The Court granted the motion for appointment of a Chapter 11 Trustee. Following this ruling, the UST appointed Harold Murphy ("Mr. Murphy") to act as Chapter 11 Trustee. *See* Docket No. 576.

26. Subsequently, creditors Beverly Mulcahey and Nichole Wilkins, who are not Committee members, requested a Chapter 11 Trustee election be conducted pursuant to 11 U.S.C. § 1104(b). *See* Docket No. 599. At that time, the Committee believed it had a duty to

6

participate in the election process to ensure that the general unsecured creditors of the estate would be protected.

27.     BPR and Mr. LeCours attended the trustee election; Mr. LeCours held proxies from Mr. Craig and Mr. Marino, the other two Committee members. Although Mr. LeCours voted for another candidate for Trustee, it was out of unfamiliarity with Mr. Murphy and not any negative belief regarding Mr. Murphy's qualifications or abilities.

28.     It was later revealed that the creditors who had requested the election were conflicted, unbeknownst to the Committee. As a result, the UST's selection, Mr. Murphy, became the Chapter 11 Trustee in this case.

### D.  It Would be Inequitable to Delay Hearing BPR's Fee Application

29.     As the UST Objection notes, upon information and belief, Mr. Murphy is planning to convert this case to Chapter 7 shortly. *See* UST Objection at ¶ 7. However, the Trustee filed the motion for permission to pay Chapter 11 administrative claimants first in order to be equitable to those professionals. In such a circumstance, delaying consideration of the BPR Fee Application would be inequitable, as it would potentially subject BPR to being put in line behind Chapter 7 administrative claims for payment.

30.     BPR has worked on this case for nearly four years without any payment. Now, BPR requests payment in the amount of $209,006.25. This amount is not unreasonable for such a long time period; the request averages to just over $4,500 per month. Additionally, BPR has voluntarily discounted its fees in this case by not raising its rates for the Committee even while BPR's rates for new clients have risen substantially since 2015.

### IV.     CONCLUSION

WHEREFORE, given the Committee's support for the BPR Fee Application and the

LeCours Declaration, there is no need for further discovery. BPR therefore requests that the Court overrule the UST Objection, grant the BPR Fee Application, and grant such other and further relief as the Court deems proper.

DATED: December 14, 2018　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　BRINKMAN PORTILLO RONK, APC

　　　　　　　　　　　　　　　By:　*/s/Daren R. Brinkman*
　　　　　　　　　　　　　　　　　　Daren R. Brinkman, Admitted Pro Hac Vice
　　　　　　　　　　　　　　　　　　*Counsel for the Official Committee of*
　　　　　　　　　　　　　　　　　　*Unsecured Creditors*

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
# FOR THE
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Chapter 11 |
| Fred Fuller Oil & Propane Co., Inc., | Case No. 14-12188-JMD |
| Debtor. | |

## DECLARATION OF GEORGE LeCOURS IN SUPPORT OF REPLY
## AND BPR FEE APPLICATION

Pursuant to 28 U.S.C. § 1746 and F.R.C.P. 43(c), I, **George LeCours**, do hereby declare under penalty of perjury in support of the *First Interim and Final Application for Allowance and Payment of Fees and Expenses of Brinkman Portillo Ronk, APC* (the "BPR Fee Application") [Docket No. 1046] and the *Reply in Support of First Interim and Final Application for Allowance and Payment of Fees and Expenses of Brinkman Portillo Ronk, APC* (the "Reply"), filed contemporaneously herewith, that:

1. I am an individual over the age of eighteen and make this declaration of my own personal knowledge. If called upon, I could and would testify competently to the facts in this declaration.

2. In February 2015, when the Committee[1] was formed, I was employed full-time by Sanel Auto Parts ("Sanel").

3. I was Sanel's representative on the Committee. In that capacity, I was also appointed Committee chairman.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Reply.

1

4. After my retirement from Sanel Auto Parts on December 31, 2016, I maintained my relationship with Sanel and have been asked to continue as their representative on the Committee.

5. I have been in regular communication with Mr. Daren Brinkman ("Mr. Brinkman"), counsel to the Committee, since the Committee hired his firm, Brinkman Portillo Ronk, APC ("BPR") on February 13, 2015. I have also communicated periodically with Mr. Marino, another committee member.

6. The most active period of the Committee's involvement in the case took place during the 17-month period following the hiring of BPR in February 2015 through July 2016.

7. During that period, BPR communicated regularly with the Committee, discussing important events in the case.

8. After creditors Wilkins and Mulcahey requested an election, Mr. Brinkman met in-person with committee members and attended the election along with us to provide guidance and support.

9. When a Chapter 11 Trustee was appointed in the case, Mr. Brinkman notified me and the Committee that the Committee's role would be diminished.

10. Mr. Brinkman informed us that the Chapter 11 Trustee would take a primary role, significantly reducing the need for our involvement and the frequency of our communications.

11. The Committee also appreciated the fact that BPR was reducing costs to the estate by stepping back its involvement.

12. During this less active period of Committee involvement, Mr. Brinkman met in-person with Matthew D'Amore, Sanel's Chief Financial Officer, and me.

13. Committee member Sanel Auto Parts supports BPR's application for compensation.

DATED: December 14, 2018             Respectfully submitted,

By: _____
George LeCours
Committee Chairman

3