UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br><br>**FRED FULLER OIL & PROPANE CO., INC.,**<br><br>Debtor. | Chapter 7<br><br>Case No. 14-12188-MAF |

### MOTION BY CHAPTER 11 TRUSTEE, PURSUANT TO FED. R. BANKR. P. 9019, TO APPROVE SETTLEMENT AGREEMENT BETWEEN THE TRUSTEE AND WILLIAM L. FULLER

Harold B. Murphy (the "Trustee"), as Trustee of the Chapter 7 bankruptcy estate (the "Estate") of Fred Fuller Oil & Propane Co., Inc. (the "Debtor"), requests that the Court enter an order (the "Approval Order") approving the settlement agreement (the "Settlement Agreement") by and among the Trustee and William L. Fuller, ("W. Fuller") (Trustee and W. Fuller, collectively the "Parties"). A copy of the Settlement Agreement is annexed as Exhibit A. Pursuant to the Settlement Agreement, W. Fuller has agreed to pay the Trustee the sum of $75,000 (the "Settlement Amount"). In exchange, and subject to receipt of the Settlement Amount, the Trustee has agreed to release all claims of the Estate against W. Fuller. In further support of this motion, the Trustee states as follows:

#### JURISDICTION AND VENUE

1. The Bankruptcy Court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334, and Rule 77.4(a) of the Local Rules of the United States District Court for the District of New Hampshire. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue of this proceeding and this motion in this District is proper under 28 U.S.C. § 1408.

2. The basis for the relief requested in this motion is found in Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9019-1 of the Local Bankruptcy Rules of the U. S. Bankruptcy Court for the District of New Hampshire (the "LBR").

### FACTUAL BACKGROUND

#### I. The Bankruptcy Case

1. The Debtor, a closely-held retail propane and oil distributor, filed for bankruptcy on November 10, 2014 (the "Petition Date"), following a long history of financial problems and negative local press. By time of the bankruptcy filing, the Debtor's primary fuel supplier had sued to seize substantially all of its assets in satisfaction of $4.7 million in unpaid bills, and there was insufficient cash to fund the Debtor's operations through to the end of the month, threatening to leave thousands of customers who had pre-paid for fuel delivery without means to heat their homes or businesses during the upcoming winter.

2. On March 17, 2016, citing an urgent need for a disinterested fiduciary to liquidate the remaining assets of the Estate, the United States Trustee moved for appointment of a Chapter 11 trustee in the Debtor's case. This need arose primarily on account of the Estate's claims against Frederick J. Fuller ("Mr. Fuller"), who had resigned as the Debtor's president, but remained the Debtor's sole director and shareholder such that the Debtor's Chief Restructuring Officer faced a conflict of interest in administering the Estate.

3. On May 10, 2016, the Bankruptcy Court authorized the appointment of a Chapter 11 trustee, and approved the U.S. Trustee's appointment of the Trustee by order dated May 16, 2016. On February 13, 2919, the case was converted to one under Chapter 7 of the Bankruptcy Code and the Chapter 11 Trustee was appointed as the Chapter 7 Trustee.

#### II. The Adversary Proceeding

4. On February 23, 2017, based upon information he gathered pursuant to several motions for authority to obtain documents from, and conduct examinations of, certain insiders of the Debtor, the Trustee commenced an adversary proceeding, against W. Fuller.

5. In the Trustee's proceeding against W. Fuller, styled as *Murphy v. William L. Fuller*, Adv. Proc. No. 17-01014-MAF (the "Adversary Proceeding"), the Trustee in his amended complaint sought to recover the sum of $259,650 which sums had been transferred by the Debtor to or for the benefit of W. Fuller and which amounts are recoverable as fraudulent transfers.

6. The Parties engaged in discovery, including document productions, expert disclosures, and depositions. Subsequently, while preparing for trial the Parties engaged in good faith negotiations to settle the Adversary Proceeding.

7. Upon consideration of all the evidence, legal issues and the risk and uncertainty of trial, the Parties reached a settlement set forth in the Settlement Agreement.

## THE STIPULATION

8. The Settlement Agreement provides, in relevant part and subject to approval by the Court, the following:

   a. W. Fuller shall make payment to the Estate in the amount of $75,000 (the "Settlement Amount"), payable on or before January 13, 2020;

   b. Simultaneous with the execution of the Settlement Agreement (a) W. Fuller shall execute and deliver to the Trustee an Agreement for Judgment for the Trustee and against W. Fuller, in the amount of $159,000, and (b) the Parties shall execute mutual releases excluding Fuller Proof of Claim (Claim no 341-1) and reserving all of the Trustee's objections thereto;

3

763186

  c. The Trustee shall hold the Agreement for Judgment, withdrawal of Claim, and Releases in escrow pending (a) receipt of the Settlement Amount in which case the Trustee shall file the withdrawal of claim, deliver the Release to W. Fuller and destroy the Agreement for Judgment or (b) upon a default by W. Fuller under the Settlement Agreement, the Trustee shall file the Agreement for Judgment, and the Release shall be null and void.

**APPROVAL OF THE SETTLEMENT AGREEMENT
IS IN THE BEST INTERESTS OF THE DEBTOR'S ESTATE**

**A. Law Governing Approval of Settlements.**

  9. Rule 9019 of the Federal Rules of Bankruptcy Procedure provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the Court may approve a compromise or settlement. Not only are settlements and compromises are normal parts of the bankruptcy process, "[c]ompromises are favored in bankruptcy." *In re Healthco Int'l, Inc.*, 136 F.3d 45, 50 n.5 (1st Cir. 1998). *See also In re Indian Motorcycle Co.*, 289 B.R. 269, 282 (B.A.P. 1st Cir. 2003) ("Stipulations of settlement are favored by the courts, and they will rarely be set aside absent fraud, collusion, mistake or other such factor as would undo a contract.")

  10. A trustee's decision to settle estate litigation should be afforded some deference. *In re Healthco Int'l*, 136 F.3d at 50 n. 5; *See also Leblanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 212 F.3d 632, 635 (1st Cir. 2000) ("When augmentation of an asset involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously - and an inquiring court must accord him wide latitude should he conclude the game is not worth the candle.").

  11. A settlement should be approved where it is fair and equitable. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414,

4

763186

424 (1968). In determining whether a proposed settlement agreement is fair and equitable, the court should "balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Jeffrey v. Desmond*, 70 F.3d 183 (1st Cir. 1995)

12. In the First Circuit, a bankruptcy court considers the following specific factors in conducting this balancing exercise to determine whether to approve a settlement:

   a. the probability of the success in the litigation being compromised;

   b. the difficulties, if any, to be encountered in the matter of collection;

   c. the complexity of the litigation involved and the expense, inconvenience, and delay in pursuing the litigation; and

   d. the paramount interest of the creditors and a proper deference to their reasonable views.

*Id.* "The court's consideration of these factors should demonstrate whether the compromise is fair and equitable, and whether the claim the debtor is giving up is outweighed by the advantage to the debtor's estate." *ARS Brook, LLC v. Jalbert (In re ServiSense.com, Inc.)*, 382 F.3d 68, 72 (1st Cir. 2004) (*quoting Jeremiah v. Richardson*, 148 F.3d 17, 23 (1st Cir. 1998)).

13. Further, the objective "is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'" *In re Healthco Int'l*, 136 F.3d at 51 (*citing Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2nd Cir. 1983)). Thus, the question is not whether a better settlement might have been achieved, or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); 10 *Collier on Bankruptcy*, ¶ 9019.02, at 9019-4.

763186

14. Within four (4) years preceding the Petition Date, the Trustee has alleged that W. Fuller received directly or indirectly an aggregate total of $159,000 in payments from the Debtor (the "Payments"). The Payments consisted of (a) a transfer of $100,000 to W. Fuller by the Debtor recorded on the Debtor's books and records as a loan but for which there was no documentation, no schedule, no specified rate of interest and no payments were made by W. Fuller and (b) payments by the Debtor to third parties on behalf of W. Fuller for goods and services relating to a renovation of residential property by W. Fuller.[1]

15. W. Fuller denies liability on each of the Trustee's claims asserting among his other defenses that the $100,000 transfer to him was a loan and that the Debtor had sued to collect that loan prior to the Petition and the complaint had been dismissed. Thus, W. Fuller asserts that the Trustee's right to recover was barred by *res judicata* or issue preclusion. W. Fuller further asserts that the majority of the transfers were made during the period three to four years preceding the Petition and at a time when the Debtor was solvent.

16. While the Trustee believes that his claims in the Adversary Proceeding are meritorious, as is the case with any litigation, the outcome is uncertain, especially where W. Fuller has asserted substantial defenses to the Trustee's claims for avoidance and recovery of the Transfers.

17. There are substantive factual disputes relating to several of the elements the Trustee may prove to establish actual fraudulent intent. Further, the Trustee's case is dependent upon establishing the Debtor's insolvency at the time the majority of the transfers occurred. Among the factual disputes impacting the Debtor's insolvency is the value of the Debtor's customer list

---

[1] During the course of discovery it appeared that certain of the payments appeared to be duplicate payments or payments for goods delivered to the Debtor and paid for by W. Fuller. Thus, the amount sought to be recovered was reduced to $159,000.

6

when the transfers occurred. In addition, there are substantial evidentiary issues relating to establishing the payments to the third parties and the validity of the Debtor's books and records.

18. In the absence of an approved settlement, the matter would need to be tried. It is expected that trial would require three (3) days and witnesses, including expert testimony on the issue of insolvency. It is also likely that the non-prevailing party would appeal the Court's decision following trial, with the possibility of further appeal thereafter and the prospect of additional expense and delayed uncertainty as to the outcome.

19. While the prepetition consumer claims have been largely satisfied under the terms of the sale and the Trustee's subsequent settlement with the purchase of those assets, this case remains administratively insolvent, as it was at the time of the Trustee's appointment.

20. Given each of the foregoing, the Settlement Agreement should be approved where: (1) when weighed against the uncertainty, delay, complexity and costs associated with continued litigation of the Adversary Proceeding, (2) the benefits to the Estate and, (3) at the very least, the proposed Settlement Agreement substantially exceeds the lowest range of reasonableness.

763186

WHEREFORE, the Trustee requests that the Court enter an order approving the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 and granting such other and further relief as may be just and proper under the circumstances.

HAROLD B. MURPHY, AS HE IS TRUSTEE OF THE CHAPTER 7 ESTATE OF FRED FULLER OIL & PROPANE CO., INC.

By his attorneys,

Dated: September 10, 2019

    /s/ Charles R. Bennett
Charles R. Bennett, Jr. (NH Bar ID #5498)
MURPHY & KING, Professional Corporation
One Beacon Street
Boston, Massachusetts 02108-3107
Tel: (617) 423-0400
cbennett@murphyking.com

763186

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") made and entered into as of August __, 2019 by and between Harold B. Murphy, as he is the Trustee of the Chapter 7 Estate of Fred Fuller Oil & Propane Co., Inc. ("Trustee") ("Debtor") and William Fuller ("W. Fuller"), collectively the Parties.

## RECITALS

WHEREAS, on November 10, 2014, the Debtor commenced a proceeding under Chapter 11 of the United States Bankruptcy Code.

WHERAS, on May 10, 2016, the Bankruptcy authorized the appointment of a Chapter 11 Trustee and approved the U.S. Trustee's appointment of the Trustee by Order dated May 16, 2016.

WHEREAS, on February 13, 2019, the case was converted to one under Chapter 7 of the Bankruptcy Code and the Chapter 11 Trustee was approved as the Chapter 7 Trustee.

WHEREAS, on February 23, 2017, the Trustee commenced an action against W. Fuller styled as *Murphy v. William L. Fuller*, Adversary Proceeding No. 17-01014-MAF ("Adversary Proceeding") and the Trustee subsequently amended his complaint seeking to recover monies transferred by the Debtor to or for the benefit of W. Fuller inserting that said transfers are recoverable as fraudulent transfers.

WHEREAS, after completing discovery and upon consideration of all of the evidence, issues and uncertainty of trial, the Parties engaged in good faith negotiations which negotiations resulted in this Agreement.

NOW, THEREFORE, in consideration of mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each party do hereby warrant, represent, acknowledge, covenant and agree as follows:

1) On or before January 13, 2020, W. Fuller shall pay to the Trustee on behalf of the Debtor's Estate the sum of Seventy-Five Thousand ($75,000) Dollars, a full and complete settlement of the claims set forth in the Adversary Proceeding. (the "Settlement Amount")

2) Contemporaneously with the execution of this Settlement Agreement,

(a) W. Fuller shall deliver to the Trustee an Agreement for Judgment for the Trustee and against W. Fuller in the amount of $159,000,

And

(b) The Parties shall executed Mutual Releases excluding therefrom W. Fuller Prof of Claim (claim number 341-1) and reserving all of the Trustee's objections thereto.

3) Upon the approval of this Settlement Agreement by the United States Bankruptcy Court for the District of New Hampshire W. Fuller shall forth with apply for a loan to pay the Settlement Amount.

4) The Trustees shall hold the Agreement for Judgment, Withdrawal of the Claim and Releases in escrow pending:

(a) Timely receipt of the Settlement Amount in which case the Trustee shall file the Withdrawal of the Claim, deliver the Release to W. Fuller and destroy the Agreement for Judgment shall be null and void,

or

(b) Upon the default by W. Fuller by his failure to timely pay the Settlement Amount, the Trustee shall file the Agreement for Judgment, the Withdrawal of Claim and the Release shall be null and void.

6) W. Fuller acknowledges that he has had an opportunity to fully review and consider the Settlement Agreement and consult with counsel and the Parties acknowledge that

2

763225

this Agreement is subject to the approval by the United Stated Bankruptcy Court for the District of New Hampshire.

6) This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original and all of which shall constitute one Agreement. A facsimile or electronic transmission of a signature shall be binding and shall be deemed to constitute an original.

IN WITNESS HEREOF, and intended to be legally bound hereby the Parties have executed this Agreement.

_____
HAROLD B. MURPHY, as he is Trustee of the Chapter 7 Estate of Fred Fuller Oil & Propane Co., Inc.

_____
WILLIAM FULLER

3

763225